# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| MICHAEL B. BLAKE, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. CIV-16-1174-M |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Michael B. Blake (Plaintiff) brings this action for judicial review of the Commissioner of Social Security's (Commissioner) final decision that he was not "disabled" under the terms of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). United States District Judge Vicki Miles-LaGrange has referred the matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3) and Fed. R. Civ. P. 72(b). Doc. 3.

After a careful review of the record (AR), the parties' briefs, and the relevant authority, the undersigned recommends the entry of judgment affirming the Commissioner's final decision. *See* 42 U.S.C. § 405(g).

## I. Administrative determination.

### A. Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just his underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B. Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

### C. Relevant findings.

#### 1. Administrative Law Judge (ALJ) findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis in order to decide whether Plaintiff was disabled during the relevant timeframe. AR 21-22;[1] *see* 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). Specifically, the ALJ found Plaintiff:

(1) had severe "degenerative disc disease; obesity; mild arthritic changes of left and right hip; status post remote history of head trauma; left shoulder rotator cuff tendonitis; hypertension; non-epileptic seizure disorder; migraines; and post-traumatic stress disorder";

(2) had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(3) had the residual functional capacity[2] (RFC) for light work with various work restrictions;

(4) was unable to perform certain past relevant work, but could perform jobs existing in the national economy; and thus

(5) had not been under a disability as defined by the Social Security Act since his alleged onset of disability on December 1, 2013.

AR 22-34.

---

[1] For the parties' briefs, the undersigned's page citations refer to this Court's CM/ECF pagination. Page citations to the AR refer to that record's original pagination.

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

### 2. Appeals Council findings.

The Social Security Administration's Appeals Council found no reason to review that decision, so the ALJ's decision is the Commissioner's final decision in this case. *Id.* at 1-4; *see Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). However, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (internal quotation marks omitted).

### B. Issues for judicial review.

Plaintiff contends the ALJ (1) failed to accord proper weight to consulting physician Dr. S. A. Chaudry's opinion on Plaintiff's walking, standing, and sitting restrictions, and, consequently (2) created a legally insufficient RFC

4

assessment because he failed to include those same restrictions. Doc. 23, at 14-21. Plaintiff also complains the ALJ failed to incorporate Plaintiff's medication side-effects into the RFC assessment. *Id.* at 21.

### C. Analysis.

#### 1. The ALJ's evaluation of Dr. Chaudry's opinion.

As an examining consultant who examined Plaintiff once, Dr. Chaudry's opinion was generally entitled to less weight than a treating physician's opinion. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004); *see* AR 1664. Nevertheless, the ALJ was required to properly consider Dr. Chaudry's opinion and provide legitimate reasons for discounting it. *See* 20 C.F.R. § 404.1527(c). Some factors the ALJ should have considered include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Krauser*, 638 F.3d at 1331 (quotation omitted). So long as the ALJ provides a well-reasoned discussion, the failure to "explicitly discuss" all the factors "does not prevent [the] court from according his decision meaningful review." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Here, the ALJ thoroughly discussed the relevant medical evidence, including Dr. Chaudry's findings on examination. AR 25-32. Relating to the medical evidence, the ALJ found:

> As for [Plaintiff's] degenerative disc disease, an April 2013 cervical spine MRI showed mild to moderate disc osteophyte complex with uncovertebral hypertrophy at C5-6 causing bilateral neural foramina stenosis and minimal central canal stenosis; and mild to moderate neural foramina stenosis on the left at C6-7, but no cord signal changes. Imaging of the lumbosacral spine indicated hypertrophic pedicle complex on the right side of L5, and mild degenerative changes at Ll-l5. However, sacroiliac joints were well maintained bilaterally, spinous processes were within normal limits, and there was no evidence of spondylolisthesis, spondylosis, or instability. Additionally, although [Plaintiff] had some tenderness to palpation in the cervical paraspinals and limited flexion in the cervical and lumbar spine, he had no signs of weakness . . . and negative straight leg raise testing on examination. Therefore, his degenerative disc disease has been treated conservatively with Lortab, Flexeril, Meloxicam, and Gabapentin for occasional radicular pain.
>
> The record does not suggest advancement of [Plaintiff's] degenerative disc disease since the alleged onset date, as he has not received treatment at the spine clinic regarding neck or lower back pain since September 2013. He was noted to have normal range of motion in the neck, normal joints, and normal movement of the extremities with no edema or tenderness during December 2013 and January 2014 examinations, and he denied any new problems related to his neck pain in December 2014. Although [Plaintiff] sought treatment for neck and upper back pain in April 2015, he did not evidence any physical deficits on examination, and he did not required hospital admission, as he endorsed benefit with treatment administered. Further, recent imaging of the cervical and lumbar spine performed in 2015 did not evidence any progression of his degeneration, as he continued to evidence no more than mild degeneration in the lumbar and cervical spine.

6

> Turning to [Plaintiff's] hip issues, the record reveals that [Plaintiff] had his right and left hip x-rayed in January 2015 due to complaints of right hip pain. However, his x-rays were unimpressive and only showed mild arthritic changes in bilateral hips without acute fracture or dislocation. As such, treating physicians opted to continue conservative treatment with Flexeril and Gabapentin as intervention was not necessary at the time.

*Id.* at 27-28 (citations omitted).

The ALJ then discussed Dr. Chaudry's December 2015 findings. The ALJ noted Plaintiff told Dr. Chaudry he could only "walk unassisted, stand, or sit for one hour at a time" but he "denied loss of power in any of his extremities, [or] radiation of pain . . . ." *Id.* at 28, 1664. On examination, Plaintiff had painful but "mostly normal range of motion" and his straight leg raising test was "negative bilaterally" and he could "walk unassisted" and with a "safe" gait. *Id.* at 28, 30, 1666. In relevant part, Dr. Chaudry opined Plaintiff could sit, stand, and walk for only one hour at a time and could sit and stand for no more than three hours in an eight-hour workday and could only walk two hours in an eight-hour workday. *Id.* at 31, 1169.

Although the ALJ adopted many of Dr. Chaudry's other findings, he gave "little weight" to the physician's "exertional limitations in walking, sitting, and standing." *Id.* at 31. The ALJ stated those limitations appeared "to be based on [Plaintiff's] subjective reports of his limitations[] (see Exhibit 14F/1, 6)" and, on examination, Plaintiff had "exhibited negative straight leg raise testing; he was able to ambulate without assistance, and his range of motion testing was

7

within normal limits (Exhibits 14F/3, 11-13)." *Id.* at 31-32.[3] The ALJ wrote "the objective findings of treating and examining sources . . . indicate that [Plaintiff] has received no more than conservative treatment for his musculoskeletal pain . . . . Further, he has retained normal range of motion and ability to ambulate despite complaints of pain . . . ." *Id.* at 31.

The undersigned finds this evidence substantially supports Plaintiff's RFC assessment, and aside from suggesting the ALJ failed to "mention that Plaintiff had been prescribed a TENS[4] unit to cope with his pain since approximately 2011," Doc. 23, at 16, Plaintiff does not point to any substantial evidence in the medical record the ALJ failed to discuss.[5] Moreover, the ALJ's

---

[3] Elsewhere, the ALJ acknowledged Plaintiff's range of motion was "mostly" within normal limits. AR 30. Plaintiff's full range of motion test revealed he could, with pain, achieve a 20 out of 25 back extension, 70 out of 90 back flexion, and 20 out of 25 back lateral flexion on both the right and left. *Id.* at 1674. On all other tests, Plaintiff was able to achieve maximum range of motion, some with pain. *Id.* at 1674-75.

[4] Transcutaneous Electrical Nerve Stimulation (TENS) units are "predominately used for nerve-related pain conditions . . . . TENS machines work[] by sending stimulating pulses across the surface of the skin and along the nerve strands." *See* http://www.tensunits.com (last visited August 23, 2017).

[5] Plaintiff does allege the ALJ misstated evidence twice. First, Plaintiff claims the ALJ "characterize[d] Plaintiff's EEGs as normal" but "the readings were interpreted as borderline abnormal on one occasion and on another, an abnormal interpretation was given with the possibility of a localization-related secure disorder related to the centro-parietal region." Doc. 23, at 17 (citations omitted). Contrary to Plaintiff's assertion, the ALJ did in fact note the "one mildly abnormal EEG" and later stated Plaintiff's EEGs "have been mostly

opinion reflects he discussed the relevant medial evidence, clarified the weight he gave Dr. Chaudry's opinion, and discussed many of the relevant factors, including: (1) the nature of the examination, (2) the degree to which the relevant evidence supported Dr. Chaudry's opinion, and (3) the consistency between the record as a whole and Dr. Chaudry's opinion. This was sufficient. *See Covington v. Colvin*, 678 F. App'x 660, 665-66 (10th Cir. 2017) (finding the ALJ properly discounted consulting physician's opinion where he "cited three reasons for giving less weight to the opinion" and plaintiff "fail[ed] to dispute the ALJ's conclusion that . . . other evidence in the record suggested that she does not have significant challenges staying focused"). This Court cannot re-weigh the evidence or substitute its judgement for the ALJ's and the undersigned recommends the court affirm on this issue.[6]

---

normal." AR 26, 30. Plaintiff also accuses the ALJ of characterizing Plaintiff as having "range of motion within normal limits, [but] ignor[ing] the fact that his range of motion with respect to his back was not within normal limits, and that Dr. Chaudry specifically noted that his exertion on physical exam was painful . . . ." Doc. 23, at 18. Again, this allegation is misleading. The ALJ acknowledged both that Plaintiff had "mostly" normal range of motion, AR 30, and that his range of motion was painful, explaining: "Dr. Chaudry noted painful range of motion, in the cervical spine and lumbosacral spine with tenderness; and painful range of motion in the left shoulder." *Id.* at 28.

[6] Though he does not appear to raise it as an independent claim—rather as an example of the ALJ's alleged errors relating directly to Dr. Chaudry—Plaintiff claims the ALJ gave "flawed" reasoning in giving the State agency physicians' opinions "great weight." Doc. 23, at 15-16. But in large part, the ALJ gave those opinions great weight because they were "consistent with the objective findings" in the medical record. AR 31. As discussed above,

9

### 2. The ALJ's RFC assessment.

Plaintiff next alleges the ALJ erred in assessing his RFC on two grounds. First, he claims the ALJ incorporated portions of Dr. Chaudry's opinion into the RFC but "did not incorporate Dr. Chaudry's opinion that Plaintiff would be unable to sit, stand, or walk for three (or less) hours of an eight-hour workday." Doc. 23, at 20. Next, Plaintiff claims the ALJ failed to include his "adverse side effects from the 19 medications he takes daily, including dizziness and drowsiness which requires him to take daily naps of one hour or more per day." *Id.* at 21. The undersigned finds no grounds for reversal in this argument.

The RFC need only include such limitations as the medical record substantially supports. *See Kirkpatrick v. Colvin*, 663 F. App'x 646, 650 (10th Cir. 2016) ("Clearly, an ALJ doesn't commit error by omitting limitations not supported by the record"); *Arles v. Astrue*, 438 F. App'x 735, 740 (10th Cir. 2011) (rejecting plaintiff's claim a limitation should have been included in his RFC because "such a limitation has no support in the record"). Here, the ALJ properly rejected Dr. Chaudry's opinion regarding Plaintiff's sitting, standing, and walking limitations—precisely because the medical evidence did not

---

substantive evidence supports the ALJ's conclusion. Further, the ALJ did not "favor non-examining physicians over an examining physician" or "choos[e] one over the other" in the manner Plaintiff suggests. Doc. 23, at 16, 18. That is, the ALJ weighed the opinions separately and did not invoke the State agency opinions in rejecting Dr. Chaudry's sit, stand, and walking limitations. AR 31-32.

support such limitations, *see supra* § II(C)(1)—and the State agency physicians opined Plaintiff could sit, stand, and walk about six hours in an eight-hour work day. AR 85, 99-100. The ALJ gave great weight to these opinions. *Id.* at 30-31. Thus, Plaintiff has failed to show any error in the ALJ's failure to include a three hour a day sit, stand, and walk limitation in Plaintiff's RFC.

Second, the only evidence Plaintiff offers to support his alleged drowsiness and need for a one-hour nap is his own testimony. Doc. 23, at 12, 21 (citing the hearing transcripts, AR 63, 65). The ALJ acknowledged this testimony, AR 25, but found Plaintiff to be less than credible, *id.* at 30, and Plaintiff does not challenge that assessment. It is not this Court's duty to search the 3,234-page record for medical evidence that *might* support Plaintiff's alleged limitation. *N.M. Off-Highway Vehicle All. v. U.S. Forest Serv.*, 645 F. App'x 795, 803 (10th Cir. 2016) ("[I]t is emphatically not this court's duty to scour without guidance a voluminous record for evidence supporting [Plaintiff's] theory." (internal quotation marks and citation omitted)). Without such evidence, Plaintiff cannot show the ALJ committed reversible error in failing to include a nap-time limitation in Plaintiff's RFC. *See McAnally v. Astrue*, 241 F. App'x 515, 518 (10th Cir. 2007) (affirming in part because plaintiff does not "discuss any evidence that would support the inclusion of any limitations [in the RFC]").

### III. Recommendation and notice of right to object.

For the reasons discussed above, the undersigned recommends the entry of judgment affirming the Commissioner's final decision.

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of Court by September 14, 2017, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to make a timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 25th day of August, 2017.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE